<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LEIANNE ESKINAZI, | |
| Plaintiff, | Case No. 2:25-cv-04879 (BRM) (JRA) |
| v. | **OPINION** |
| CORPORATE SUBSCRIPTION MANAGEMENT SERVICES, LLC, *et al.*, | |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are Defendants Corporate Subscription Management Services, LLC, d/b/a

Couranto ("Couranto") and Julie Auslander's ("Auslander") (together, "Defendants") Motion to

Dismiss ("Motion") (ECF No. 36) Plaintiff Leianne Eskinazi's ("Eskinazi") Amended Complaint[1]

(ECF No. 26) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a

claim upon which relief can be granted. Eskinazi filed an Opposition on November 3, 2025 (ECF

No. 40), and Defendants filed a Reply on November 11, 2025 (ECF No. 41).

Having reviewed and considered the submissions filed in connection with the Motion and

having declined to hold oral argument pursuant to Rule 78(b), for the reasons set forth below and

---

[1] Both Eskinazi and Defendants refer to both Eskinazi's Complaint (ECF No. 1) and her first Amended Complaint (ECF No. 26). (*See, e.g.*, ECF No. 36-1 at 15; ECF No. 40 at 9.) The Court reads references to the Complaint to mean Eskinazi's Amended Complaint, which supersedes the original Complaint. *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013) ("[An amended complaint] supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." (internal quotation and citation omitted)).

for good cause having been shown, Defendants' Motion to Dismiss (ECF No. 36) is **GRANTED IN PART** and **DENIED IN PART**.

I.    **BACKGROUND**

For purposes of this Motion, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Eskinazi. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

**A.  Factual Background**

Eskinazi spent over twenty years "doing [human resources ("HR")] work" before joining Couranto, a company that "streamlines access across licensed content, research, market data, subscriptions, and contracts of all types" to "300,000 global users." (ECF No. 26 ¶¶ 11–12.) Prior to joining Couranto, she amassed experience with software that generates monthly financial statements, as well as the migration of various accounting and payroll systems. (*Id.* ¶ 13.) She had also become familiar with an "ADP time reporting software" and benefit tracking software. (*Id.*) Additionally, Eskinazi helped with the opening of a new warehouse facility. (*Id.*) Because of this background and experience, Auslander, the President of Couranto, approached Eskinazi for the role of Director of Finance and Human Resources. (*Id.* ¶¶ 12–13.)

In her HR role at Couranto, she worked "on payroll, [Couranto's] compliance and . . . policy manual, health insurance renewals, time and attendance tracking, employee performance reviews, [the] employee incentive program, and [the] employee wellness program, among other things." (*Id.* ¶ 12.) Her finance related responsibilities included reviewing the American Express credit card balance, bank accounts, weekly production for publisher payments, international

2

invoices, mail, operating expenses, commercial insurance, processing the weekly check run for publisher payments, and processing the biweekly payroll. (*Id.* ¶ 14.)

According to Eskinazi, in 2014, she became partners with Auslander, Rifkin, and Ken Redler ("Redler"). (ECF No. 26 ¶ 16.) Auslander sent Eskinazi an email, outlining an earlier discussion between Auslander, David Rifkin ("Rifkin"), and Eskinazi on March 24, 2014. (ECF No. 26-2 at 21; *id.* ¶ 15.) The email reads, in relevant part, as follows:

1. You would receive 3% of the company's stock. This would vest as long as you remain with the company for a minimum of five years or unless and until the company or any portion of the company is sold, in which case you would vest immediately.
2. You would have the title of Vice President / Accounting and HR, and you would be part of the Senior Management Team (currently Julie, David and Ken, and now four of us with you). You would participate in all meetings of the Senior Management Team.
3. As part of our commitment towards your personal development we will direct Doug to work with you to begin to: [a]ssume some of his responsibilities[,] [i]mprove your skills in communicating financial results[,] [and] [e]nable you to provide strategic financial direction for the Company[.]
4. Assuming you would like to do so, you will be asked to head up a concerted effort to add at least one person to our Technology Group staff. David will host and lead a discussion with Ken that will assure Ken's compliance in this endeavor.
5. As a partner, the company will pay your health insurance as we do for all the partners; currently this is 100% of our health insurance costs.
6. As a partner, the company will pay for your car lease up to a maximum of $400 per month.
7. As a partner, the company will pay for gasoline up to $50 per month.
8. As a partner, the company will pay for your home internet service.
9. As a partner, the company will pay for your cell phone service up to $100 per month.
10. As a partner, the company will provide you with use of a timeshare for one week every year.

(ECF No. 36-2 at 21.)

As a partner, Eskinazi "received health insurance, a car, gas, internet, and cell payments." (ECF No. 26 ¶ 16.) She also had use of a timeshare. (*Id.*) At some point, she assumed the responsibilities of two "outside" chief financial officers. (*Id.*) However, Eskinazi "was consistently excluded from meetings and treated differentially in compensation than her male, younger, and/or perceived to be healthier partners."[2] (*Id.*)

In June 2016, Eskinazi underwent triple arthrodesis surgery and took time off to recuperate but "was pressured to return to work." (*Id.* ¶ 17.) During her medical leave, Auslander and Doug Wilder ("Wilder"), the Chief Financial Officer at the time, would visit her in person, and the three of them would do work. (*Id.*)

At Couranto, Eskinazi trained Chris Verga ("Verga"), Shamim Arman ("Arman"), Michael Ruber ("Ruber"), and Dawn Lewis ("Lewis"), the four senior employees in Finance and HR, who ultimately "received higher title[s] and pay than" Eskinazi. (*Id.* ¶ 18.) Despite their positions and compensation, a number of these senior employees struggled with their responsibilities. (*Id.* ¶ 19.) For instance, in December 2020, Arman "could not implement Bill.com." (*Id.* ¶ 19.) Although Eskinazi came up with the solution, it was Ruber who received credit from July 2021 to July 2022. (*Id.*) Eventually, "Bill.com was the full responsibility of" Eskinazi's again. (*Id.*) In July 2022, Lewis was "supposed to process all payments under $10,000 but then it was increased to over $25,000 as she needed [Eskinazi's] help to" process all payments "under $25,000." (*Id.*) Nonetheless, Lewis was better compensated than Eskinazi. (*Id.*) Additionally, although Amparo Guerrero ("Guerrero") was responsible for the "international payments B stream," Eskinazi had to

[2] Based on the Amended Complaint, it is unclear whether Eskinazi suffered from any disability during 2014. Indeed, the first indication of any ailment is June 2016 when Eskinazi had surgery to fuse her right ankle and for her osteoarthritis. (ECF No. 26 ¶ 17.)

handle that work.[3] (*Id.*) So, while Eskinazi was experiencing "health conditions," she had to juggle "Bill.com, voiding returned checks, and training" a new employee. (*Id.*) These responsibilities led her to spend an extra two to three hours working each day. (*Id.*) In December 2022, because of the extra time she had to spend at work and her "growing health concerns," she stepped back from working at Certify My Company, another one of Auslander's companies. (*Id.* ¶ 20.)

In March 2023, Eskinazi's mental and physical pain greatly increased. (*Id.*) She needed triple right ankle surgery and fusion pins and to work from home. (*Id.*) Eskinazi emailed Auslander and Lewis on June 26, 2023, asking to go to the office two days a week "due to the problems with her foot and her second-floor condo walk up." (*Id.* ¶ 21.) During this time, she had to "run checks and mail" on Tuesdays and perform bank deposits on Thursdays. (*Id.*)

On July 1, 2023, Eskinazi was asked to fill out an ADA form,[4] which she did, saying she needed remote work. (*Id.* ¶ 22.) Indeed, "[m]any [Couranto] employees work remotely, even in customer service and IT." (*Id.* ¶ 23.) The following day, unable to walk due to the pain in her ankle and groin, Eskinazi went to the emergency room. (*Id.* ¶ 22) She was hospitalized for three days and was sent to rehab for six weeks. (*Id.*) Despite her limping, Eskinazi spent two of the six weeks working with the assistance of a cane because she "kn[e]w[] [Couranto] [would] not like to give her full time off to recover." (*Id.*) Couranto required her to be in the office on July 13, 2023. (*Id.*)

Eskinazi pointed out there were other employees who lived close by and who could "help her with checks, mail[,] and deposits[,] . . . but [Couranto] refused to provide this accommodation." (*Id.*) Instead, Couranto informed Eskinazi she had to work fifteen to twenty hours for the time

---

[3] The Amended Complaint does not include information about Guerrero's age or whether she is disabled.

[4] Although Eskinazi does not indicate what an ADA form is, the Court assumes she is referring to an Americans with Disabilities Act form.

being, working "only on Amex reconciliation and bank reconciliations." (*Id.* ¶ 23.) However, Eskinazi would lose the car provided by Couranto and "other benefits[,] which . . . m[ade] it completely impossible financially for her to work[.]" (*Id.*) Eskinazi noted she would "be better off on short term disability not working." (*Id.*) Couranto informed Eskinazi "it could not hold the job open for a [six-]month leave." (*Id.* ¶ 24.) Still, Eskinazi took a leave of absence. (*Id.*)

By September 9, 2023, Eskinazi was admitted back to the hospital and had hip replacement surgery two days later. (*Id.* ¶ 25.) She was discharged on September 13, 2023. (*Id.*) From September 26, 2023, to October 17, 2023, she was at physical therapy three times a week. (*Id.*) On October 27, 2023, she was cleared to return to work at the beginning of December 2023. (*Id.*) Eskinazi was ultimately "fired on November 7, 2023" at the age of sixty-four. (*Id.*)

### B. Procedural History

Eskinazi filed the Complaint in the United States District Court for the Southern District of New York ("SDNY"), initiating this action on February 18, 2025. (ECF No. 1.) Defendants waived service of a summons of this action on March 3, 2025. (ECF No. 9.) On April 28, 2025, Defendants filed a motion to dismiss. (ECF No. 11.) On May 7, 2025, Eskinazi filed a letter motion seeking an extension of time to file a response to Eskinazi's motion to dismiss (ECF No. 12), which the court granted (ECF No. 13). On May 20, 2025, the parties stipulated this action could have been brought in the United States District Court for the District of New Jersey in the Newark Vicinage ("DNJ") and asked the court to transfer the case. (ECF No. 14.) The next day, the court ordered the case transferred from SDNY to DNJ.[5] (ECF No. 15.)

_____

[5] On May 22, 2025, the case was assigned to the Hon. Leo M. Gordon, Judge of the United States Court of International Trade, sitting by designation, and the Hon. Jose R. Almonte, U.S.M.J. The Hon. Renee Marie Bumb, U.S.D.J., reassigned the case to the undersigned for all further proceedings on July 15, 2025. (ECF No. 23.)

Eskinazi filed an Amended Complaint against Defendants on July 20, 2025. (ECF No. 26.) On August 19, 2025, pursuant to the Court's judicial preferences, Defendants filed a letter requesting a pre-motion conference, previewing their arguments for dismissing the Amended Complaint pursuant to Rule 12(b)(6). (ECF No. 28.) Eskinazi filed a response to Defendants' pre-motion letter on September 9, 2025. (ECF No. 31.) Having reviewed the letters, the Court determined a pre-motion conference would not be beneficial and ordered the parties to proceed with motion practice. (ECF No. 32.)

Defendants filed a Motion to Dismiss on September 26, 2025. (ECF No. 36.) Eskinazi filed an Opposition on November 3, 2025. (ECF No. 40.) Defendants filed a Reply on November 11, 2025. (ECF No. 41.)

## II.    LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . ." *Id.* at 231 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, assuming factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. *Iqbal*, 556 U.S. at 677. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 678. The Supreme Court's ruling in *Iqbal* emphasizes a plaintiff must show the allegations of his or her complaints are plausible. *See id.* at 670.

While the Court generally may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

## III.    DECISION

### A.    Breach of Contract

Defendants argue that Eskinazi has failed to state a breach of contract claim because she cannot show the existence of a contract. (ECF No. 36-1 at 9–10.) According to Defendants, Eskinazi's breach of contract claim is based on the March 2014 email between Eskinazi and Auslander,[6] which Defendants contend is merely an offer to discuss a partnership and not a "definitive offer capable of acceptance." (*Id.* at 10.) Furthermore, Defendants point out Eskinazi has failed to "allege that a contract was written up or executed, that she provided any consideration

---

[6] When reviewing a motion to dismiss, courts generally focus on the facts as alleged in the complaint. However, courts may consider documents integral to the complaint. *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). The email in question is integral to Eskinazi's Amended Complaint as it relies heavily upon the email's terms and effect. *Id.* The email includes the following language: "Please review this outline as a starting point of the synopsis of our conversation." (ECF No. 36-2 at 21.)

for the creation of [the] contract, or even any terms of [the] contract." (*Id.*) Indeed, Defendants further contend Eskinazi has not supplied factual allegations that "her termination breached any provision" of the alleged contract. (*Id.*)

According to Eskinazi, there was a valid contract between the parties, which Defendants supposedly breached. (ECF No. 40 at 11 ("[T]here was . . . offer, acceptance, reliance, and performance on both sides.").) Relying on *Castle Couture, LLC v. Azaria Bridal LLC*, Eskinazi argues there was a manifestation of agreement to the content of the alleged email offer because (1) there was a "meeting of the minds to the terms of [the alleged] contract," (2) Eskinazi "'agreed' to the terms," and (3) Defendants failed to "object for months." (*Id.* at 10 (quoting Civ. A. No. 17-6857, 2020 WL 5587449, at *3 (D.N.J. Sept. 18, 2020)).) Additionally, Eskinazi notes any missing terms in the supposed email offer are immaterial, and their absence does not prevent the formation of a contract between the parties. (*Id.* at 10–11 (citing *D'Agostino v. Domino's Pizza, Inc.*, Civ. A. No. 17-11603, 2025 WL 2161679 (D.N.J. Jan. 31, 2025), *R. & R. adopted*, 2025 WL 2237652 (D.N.J. Aug. 6, 2025)).)

Defendants raise three points in response to Eskinazi's Opposition. First, Defendants reiterate the email in question was merely a preliminary discussion and not a definite offer, which lacks any "mention of when and how [Eskinazi] would join as a member." (ECF No. 41 at 6–7.) Because the supposed email offer is missing this "essential term," Defendants contend the email was "only the starting point of a discussion." (*Id.* at 7.) Second, Defendants argue Eskinazi's response to the email did not provide an "unqualified acceptance to conclude the manifestation of assent." (*Id.* (quoting *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992)).) Third, Defendants insist the email is too incomplete and indefinite to establish an enforceable contract. (*Id.* at 8–9.)

"[T]he basic features of a contract" are "offer, acceptance, consideration, and performance by both parties." *Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 556 (N.J. 2013). "A contract arises from offer and acceptance[] and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (quoting *W. Caldwell v. Caldwell*, 138 A.2d 402, 410 (N.J. 1958)). To make out a breach of contract claim, a plaintiff must show (1) the existence of a contract, (2) plaintiff's performance of the contract, (3) defendant's failure to do what the contract required, and (4) damages to the plaintiff from defendant's breach of the contract. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (citing *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)).

Eskinazi has failed to state a breach of contract claim because she has failed to sufficiently allege the existence of a contract. *Goldfarb*, 245 A.3d at 577. Under New Jersey law, a contract arises from offer and acceptance. *Id.* Despite Eskinazi's insistence that the March 2014 email was an offer capable of acceptance, it is not. *Ming Zhang v. Minuskin*, Civ. A. No. 2702-17T2, 2019 WL 6770020, at *2 (N.J. Super. Ct. App. Div. Dec. 12, 2019) ("Whether an offer capable of acceptance has been made depends upon 'what meaning the words should have conveyed to a reasonable person cognizant of the relationship between the parties and all of the antecedent and surrounding facts and circumstances.'" (quoting *Esslinger's, Inc. v. Alachnowicz*, 172 A.2d 433, 437 (N.J. Super. Ct. App. Div. 1961))). As Defendants point out, the language included in the March 2014 email "should have conveyed" Defendants were merely beginning discussions with Eskinazi. *Ming Zhang*, 2019 WL 6770020, at *2. Indeed, Defendants introduce and describe the key information in the email as a mere "starting point." (ECF No. 36-2 at 21.)

Accordingly, Eskinazi's breach of contract claim is **DISMISSED WITHOUT PREJUDICE**.

### B.  Title VII: Age, Sex, and Disability Discrimination Claim[7]

With respect to Eskinazi's sex discrimination claims brought pursuant to Title VII, Defendants argue Eskinazi has alleged "nothing more than the conclusory allegation that her termination must have been due to her age, sex, or disability." (ECF No. 36-1 at 11.)

Eskinazi disagrees with Defendants and contends she has sufficiently stated her sex-based discrimination claim. (ECF No. 40 at 13.) With respect to this claim, Eskinazi notes she "has shown she is a woman, . . . suffered a termination, . . . was qualified for her position and the position of other men, and that favoritism was shown to males." (*Id.* (citing ECF No. 26 ¶¶ 11–14, 18–19, 26).)

In reply, Defendants again argue Eskinazi has failed to state her sex discrimination claim because the claim as alleged is "conclusory" and unsupported by "details about the comparators' qualifications [or] positions." (ECF No. 41 at 9 (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).) Moreover, Defendants contend Eskinazi's sex discrimination claim cannot survive a motion to dismiss because Eskinazi "provides no specific facts [to] show[] that any adverse employment action was motivated by . . . gender biased animus." (*Id.* at 11.)

To establish a *prima facie* case of sex discrimination under Title VII, a plaintiff must show (1) "s/he is a member of a protected class," (2) "s/he was qualified for the position s/he sought to attain or retain," (3) "s/he suffered an adverse employment action," and (4) "the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel v.*

---

[7] Title VII prohibits an employer from discriminating against any individual on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In other words, disability is not covered under Title VII. *See Blair v. Wal-Mart Stores Inc.*, Civ. A. No. 03-717, 2004 WL 2283560, at *3 (D. Del. Sept. 30, 2004). Accordingly, neither a disability nor age discrimination claim is cognizable under Title VII, and such a claim brought under Title VII must be **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6).

*M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013). However, to survive a motion to dismiss, a plaintiff need not establish the elements of a *prima facie* case; a plaintiff merely must 'put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Gladden v. Solis*, 490 F. App'x 411, 412 (3d Cir. 2012) (quoting *Fowler*, 578 F.3d at 213).

As alleged in the Amended Complaint, on top of being "proficient at Excel, Word, ADP, and QuickBooks," Eskinazi "was the past President of the [local chapter of the] American Payroll Association and a Board Member for 8 years, . . . spent 23 years at Weave Corporation as Assistant Controller," was "Assistant Controller" at a furniture store, and "worked on payroll, the compliance and company policy manual, health insurance renewals, time and attendance tracking, employee performance reviews, [an] employee incentive program, and [an] employee wellness program." (ECF No. 26 ¶ 12.) According to Eskinazi, this background, particularly her background in payroll software, is what led Auslander to approach her for the Director of Finance and Human Resources position. (*Id.* ¶¶ 13–14.) Given her seniority, Eskinazi notes she was able to perform the "essential functions of her job . . . remotely" despite the "pain in her ankle and groin" because all of her in-person responsibilities were merely "secretarial and administrative." (*Id.* ¶ 22.)

Eskinazi has put forth sufficient facts to survive Defendants' Motion to Dismiss her sex discrimination claim brought pursuant to Title VII. The parties do not dispute Eskinazi is a member of a protected class based on her sex, nor do they dispute she suffered an adverse employment action. Instead, they dispute whether Eskinazi has put forth sufficient facts with respect to her qualifications for the position she sought to retain, and whether the adverse employment action could give rise to an inference of intentional discrimination. (ECF No. 36-1 at 11–12.) Although Defendants do not contest Eskinazi was qualified for the job when she was hired, they argue she

became "unwilling to go to the office to complete job duties that required her in person." (ECF No. 36-1 at 11.) But Eskinazi contends these in person duties were not "essential functions of her job." (ECF No. 26 ¶ 22.) Construing all inferences in her favor, the Court takes her allegations about his experience and her explanation of the position's essential functions to mean she was qualified for the position. *Gladden v. Vilsack*, 483 F. App'x 664, 665 (3d Cir. 2012).

Moreover, Eskinazi has articulated facts that raise an inference of sex discrimination. According to Eskinazi, her sex discrimination claim is supported by several factual allegations: (1) a male coworker received credit for her work, (2) her "job was only returned to her when [a male coworker] did not want to do it anymore," and (3) one of her male coworkers could not implement Bill.com, a key responsibility as Director of Finance, but "received [a] higher title and pay than her." (ECF No. 40 at 13 (citing ECF No. 26 ¶¶ 18–19).) While included in her Opposition, it is unclear where in the Amended Complaint Eskinazi included the allegation that her job was only returned to her after a male coworker did not want to do it anymore. (*But see* ECF No. 26 ¶ 19); *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (holding the complaint may not be amended by the briefs in opposition to a motion to dismiss). Still, accepting Eskinazi's asserted facts in the Amended Complaint as true, the remaining two factual allegations support an inference she was terminated on account of her sex. *Baughman v. Marathon Petroleum Logistics Servs., LLC*, Civ. A. No. 24-287, 2025 WL 492003, at *4 (M.D. Pa. Feb. 13, 2025) (finding an inference of discrimination where plaintiff was terminated after "she was treated more poorly than male employees by" her supervisor and "other male colleagues," including by excluding her from meetings and criticizing her). As in *Baughman*, Eskinazi alleges in the lead up to her termination, she was treated more poorly than her male counterparts despite being more

capable. *Id.* at *4. Accordingly, Defendants' motion to dismiss Eskinazi's sex discrimination claim brought under Title VII is **DENIED.**

### C.  Title VII: Hostile Work Environment

Because Eskinazi has not alleged she was subjected to any discriminatory intimidation, Defendants argue Eskinazi cannot establish a hostile work environment claim. (ECF No. 36-1 at 13.) According to Defendants, Eskinazi has not included any facts that show Defendants directed harassing conduct at Eskinazi because of her disability. (*Id.* at 14.) Additionally, Defendants contend Eskinazi has merely put forth facts unique to disparate treatment and failure to accommodate claims, which cannot support a hostile work environment claim. (*Id.* at 13.)

Eskinazi argues Defendants' central attack on her hostile work environment claim is whether she has sufficiently shown the discrimination directed at her based on her sex, age, and disability was "severe and pervasive." (ECF No. 40 at 15.) Eskinazi highlights a litany of facts included in her Amended Complaint that purportedly show such discrimination was in fact "severe and pervasive." (*Id.* at 15–17.) She also notes courts in the Third Circuit prefer to address the question of whether "the conduct in question is severe or pervasive" after discovery at the summary judgment stage. (*Id.* at 15 (citing *Hopkins v. AMAZON.COM.DEDC, LLC*, Civ. A. No. 24-10005, 2025 WL 2350469, at *6 (D.N.J. Aug. 13, 2025) (collecting cases)).)

Defendants, however, argue the facts highlighted by Eskinazi "are, at most, discrete employment decisions or workplace disagreements, not a pattern of discriminatory intimidation or abuse." (ECF No. 41 at 13.)

To succeed on a hostile work environment claim, a "plaintiff must establish that 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of

*respondeat superior* liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir.

2013); *see also Hamzat v. Pritzker*, Civ. A. No. 14-6440, 2017 WL 2798247, at *3 (D.N.J. June

28, 2017) (applying same framework to a Title VII disability based hostile work environment

claim); *Retzler v. McDonalds*, Civ. A. No. 20-1256, 2020 WL 1164797, at *3 (E.D. Pa. Mar. 10,

2020) (articulating same framework for a Title VII age based hostile work environment claim).

"The first four elements establish a hostile work environment, and the fifth element determines

employer liability." *Id.* (citing *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104

(3d Cir.2009)). The hostile work environment standard is an objective one, based on "an

environment that a reasonable person would find hostile or abusive." *Harris v. Forklift Sys., Inc.*,

510 U.S. 17, 21 (1993). "However, even where 'many of [a] plaintiff['s] allegations, standing

alone, would be insufficient to state a cause of action,' the allegations may be [enough] to state a

claim when '[v]iewed cumulatively.'" *Lauto v. Dover. Pub. Sch. Dist.*, Civ. A. No. 21-18246, 2022

WL 3646573, at *4 (D.N.J. Aug. 24, 2022) (quoting *Shepard v. Hunterdon Dev. Ctr.*, 803 A.2d 611,

626 (N.J. 2002)).

Eskinazi has alleged facts to support her hostile work environment claim at this point in

the litigation. Here, Defendants' primary argument against Eskinazi's hostile work environment

claim is the Amended Complaint "does not contain any allegations that she was subjected to any

discriminatory intimidation, let alone anything that would rise to the level of being pervasive or

severe." (ECF No. 36-1 at 13.) Eskinazi, on the other hand, highlights the facts in her Amended

Complaint she claims would support pervasive and severe conduct that would support such a

claim. (ECF No. 40 at 15–17 (citing ECF No. 26 ¶¶ 17–19, 21–22, 25–26).) According to

Defendants, these allegations are, "at most, discrete employment decisions or workplace

disagreements, not a pattern of discriminatory intimidation or abuse." (ECF No. 13.)

16

Here, "because Defendant[s'] challenge to [Eskinazi's] hostile work environment claim is centered around the severe and pervasive element, the Court joins other district courts in [the Third] Circuit who have determined that this issue is best reserved for summary judgment." *Hopkins*, 2025 WL 2350469, at *6 (collecting cases). Construing the allegations in the light most favorable to Eskinazi, Eskinazi has set forth sufficient facts to plead a plausible hostile work environment claim based on her sex, age, and perceived disability. *Hopkins*, 2025 WL 2350469, at *6 (concluding the plaintiff had made out a hostile work environment claim by alleging, in part, he was passed over in favor of younger employers and was denied training or access to programs necessary to do his job "dating back to 2020"). As in *Hopkins*, Eskinazi has alleged severe and pervasive conduct dating back to 2020. (ECF No. 26 ¶ 18.) For example, she alleges she trained younger, non-disabled and several male staff in June 2020 who ended up with more senior titles and more pay. (*Id.*) Additionally, in "July 2021 to July 2022," despite coming up with solutions to problems at work, she claims male coworkers were receiving the credit. (*Id.* ¶ 19.) Accordingly, Defendants' motion to dismiss Eskinazi's hostile work environment claim brought pursuant to Title VII is **DENIED**.

### D.  ADEA: Age Discrimination

Defendants argue Eskinazi fails to state an age discrimination claim under the ADEA. (ECF No. 36-1 at 10–11.) According to Defendants, Eskinazi has "failed to provide a sufficient factual predicate." (*Id.* at 11.)

Eskinazi contends she has sufficiently pled such a claim. (ECF No. 40 at 11.) Specifically, Eskinazi highlights the following facts from the Amended Complaint: "she is over 40, suffered a termination, . . . was qualified for the position, and favoritism was shown to younger employees." (*Id.* (citing ECF No. 26 ¶¶ 11–14, 18–19, 26).) Eskinazi also points out the following: (1) she

trained younger staff who "ended up earning more," (2) "Defendants refused to get her help," (3) "younger people would get credit for her work," (4) "younger employees would . . . get her work entirely as she was presumed to be slower," and (5) "younger[,] less competent employees were not fired." (*Id.* (citing ECF No. 26 ¶¶ 18–19, 26).)

Defendants argue Eskinazi's age discrimination claim is deficient because the facts she provided to raise an inference that Couranto terminated her on the basis of her age are conclusory. (ECF No. 41 at 10.) In support of that argument, Defendants rely on *Guirguis v. Movers Specialty Services, Inc.*, 346 F. App'x 774, 776 (3d Cir. 2009) (dismissing plaintiff's race based discrimination claim where the claim relies only on "factually unsupported legal conclusion[s]") and *Hassell v. Johnson & Johnson*, Civ. A. No. 13-4109, 2014 WL 174426, at *5 (D.N.J. May 1, 2014) (dismissing the plaintiff's age discrimination claim brought pursuant to the New Jersey Law Against Discrimination because the claim was buttressed only by conclusory statements),

With respect to an age discrimination claim, it is sufficient to allege a *prima facie* case to defeat a motion to dismiss. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021). However, "it is not necessary." *Id.* Instead, the "complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)).

Although Defendants question whether Eskinazi has alleged enough facts to give rise to an inference of unlawful discrimination, applying the standard articulated in *Martinez*, the Court holds Eskinazi has put forth enough facts to survive dismissal of her ADEA age discrimination claim. 986 F.3d at 267. While Defendants seek to cast the factual allegations in support of this claim as "conclusory" (ECF No. 41 at 11) the Third Circuit has explained facts of this kind are sufficient. *Martinez*, 986 F.3d at 267.

First, Eskinazi was 64 years old at the time of her termination and is covered under the ADEA. (ECF No. 26 ¶ 26); *see Kaprowski v. Esti Foods, LLC*, Civ. A. No. 21-14693, 2022 WL 2289559, at *3 (D.N.J. June 24, 2022). Second, as discussed above, she suffered an adverse employment action when she was fired from her job. *Kaprowski*, 2022 WL 2289559, at *3. Third, she alleges, and the Court accepts as true, she was qualified for her former position. *Id.* Fourth, she alleges facts, which the Court accepts as true, raising a reasonable expectation that discovery will reveal age was the reason for her termination. *Id.* Eskinazi notes she was "consistently treated different[ly] in compensation and worse than her . . . younger counterparts at the [c]ompany." (ECF No. 26 ¶¶ 18, 26.) She also alleges men were receiving credit for her work. (*Id.* ¶ 19.) "These facts raise the reasonable expectation that discovery will uncover evidence of discriminatory motive." *Martinez*, 986 F.3d at 267. Defendants seek to cast these allegations as "merely subjective perceptions [that] lack the factual enhancement required to plausibly suggest discriminatory intent" under *Twombly* and *Iqbal*. (ECF No. 41 at 11.) But these are the kinds of "suspicious details" that help move the needle from the possible to the plausible. *Martinez*, 986 F.3d at 267. Accordingly, Defendants' motion to dismiss Eskinazi's age discrimination claim brought under the ADEA is **DENIED.**

### E. ADA: Disability Discrimination and Failure to Accommodate

#### 1. Disability Discrimination

Defendants ask the Court to dismiss Eskinazi's disability discrimination claims because she has put forth "nothing more than the conclusory allegation that her termination must have been due to her age, sex, or disability." (ECF No. 36-1 at 11.) More specifically, Defendants note Eskinazi has "not allege[d] that anyone made any negative comments related to [her] . . . disability or that she was treated differently in any material ways than . . . employees who do not share her

protected characteristics." (*Id.*) Defendants point out Eskinazi has "not allege[d] a single fact connecting her . . . disability to her termination." (*Id.*)

Eskinazi disagrees. She lists several facts she contends do support a disability discrimination claim. (ECF No. 40 at 13–14 (citing ECF No. 26 ¶¶ 11–14, 17–19, 21–22, 25–26).) Based on these facts, Eskinazi argues she has shown that she "has a disability, . . . was qualified, and . . . was terminated in suspected conditions." (*Id.* at 13.)

Defendants argue the facts in Eskinazi's Amended Complaint are nonetheless insufficient to support a disability discrimination claim because Eskinazi has not "allege[d] that she was qualified to perform the essential functions of [her] job, or [that] [she] was performing those essential functions, either with or without . . . reasonable accommodation[s]." (ECF No. 41 at 12.)

The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, prohibits a "covered entity" from "discriminat[ing] against a qualified individual on the basis of [a] disability in regard to . . . the . . . discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, a plaintiff is disabled if she (1) has a "physical or mental impairment that substantially limits one or more" of her "major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citing 42 U.S.C. § 12102(1)). "[M]ajor life activities include . . . working." 42 U.S.C. § 12102(2)(A). To state a *prima facie* case of discrimination under the ADA, a plaintiff "must show that she: (1) is disabled; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by her employer; and (3) has suffered an adverse employment action as a result of her disability." *Petti v. Ocean Cnty. Bd. of Health*, 831 F. App'x 59, 63 (3d Cir. 2020) (citing *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186 (3d Cir. 2009)).

First, taking her factual assertions as true, Eskinazi has alleged facts showing she is disabled under the ADA based on the "regarded as" definition of disability. *See, e.g.*, *Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 434 (E.D. Pa. 2023). Although she has not pointed to a specific medical condition, she notes she was "unable to walk due to pain in her ankle and groin," she "was hospitalized . . . and sent to rehab," and she filled out an "ADA form . . . saying she needed remote work." (ECF No. 26 ¶ 22.) Together, these factual allegations support the inference her employer was "aware of [her] condition . . . at the time of h[er] termination," which is enough to demonstrate her employer regarded her as disabled, "creat[ing] a reasonable inference h[er] termination was 'because of an actual or perceived physical . . . impairment.'" *Hanafy*, 669 F. Supp. 3d at 434 (quoting 42 U.S.C. § 12102(3)(A)). Second, as discussed above, taking Eskinazi's factual allegations as true, for purposes of this Motion, Eskinazi has sufficiently alleged facts demonstrating she was qualified to perform the essential functions of the job with reasonable accommodations by her company. *See supra* at Section III.B; *see, e.g.*, *Thankgod v. Bellwether Behav. Health*, Civ. A. No. 19-20617, 2021 WL 5195662, at *2 (D.N.J. Nov. 8, 2021) ("While his accommodation would have inherently precluded him from doing 'heavy lifting,' it was nevertheless reasonable and, because he would have been able to perform the other essential functions with that accommodation, he has adequately alleged that he was a qualified individual for ADA purposes."). Third, Eskinazi has put forth sufficient facts to demonstrate she suffered an adverse employment action because of her disability. (ECF No. 26 ¶¶ 22, 23, 26 (noting she was "unable to walk due to pain in her ankle and groin," had requested remote work via an "ADA form," was not permitted to work remotely, and ultimately was "fired on November 7, 2023").) Accordingly, Defendants' motion to dismiss Eskinazi's disability discrimination claim is **DENIED**.

### 2. Failure to Accommodate

To state a claim for disability discrimination under the ADA based on Defendant Couranto's failure to accommodate Eskinazi's alleged disability, Eskinazi must allege facts demonstrating:

> (1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination . . . [which] include[s] refusing to make reasonable accommodations for [her] disabilit[y].

*Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186-87 (3d Cir. 2009). If an employee requests an accommodation, the employer and employee must determine an accommodation that is reasonable through a "flexible, interactive process." *Id.* at 187. Both employers and employees "have a duty to assist in the search for [an] appropriate reasonable accommodation and to act in good faith." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 312 (3d Cir. 1999) (internal quotation marks and citations omitted). Employers can demonstrate good faith by "meet[ing] with the employee who requests an accommodation, request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some sign of having considered employee's request, and offer[ing] and discuss[ing] available alternatives when the request is too burdensome." *Id.* at 317. However, a plaintiff cannot demonstrate a lack of good faith "if[,] after [the employer] confer[s] with the employee to find possible accommodations, the employee then fails to supply information that the employer needs or does not answer the employer's request for more detailed proposals." *Id.*; *see also Tatum v. Hosp. of Univ. of Pa.*, 57 F. Supp. 2d 145, 149 (E.D. Pa. 1999), *aff'd*, 216 F.3d 1077 (3d Cir. 2000).

As to Eskinazi's failure to accommodate claim, Defendants only argue Eskinazi has conceded "some of her essential job functions required her physical presence in the office, making

her proposed accommodation of working from home full time unreasonable." (ECF No. 36-1 at 12.) However, Defendants do not include a citation to the Amended Complaint to support that argument. (*Id.*) Indeed, as the Court reads the Amended Complaint, Eskinazi alleges the "essential functions of her job . . . can be done remotely, and anything in person were secretarial and administrative duties" beyond the scope of her role. (ECF No. 26 ¶ 22.) Therefore, as discussed above and for purposes of the motion to dismiss, Eskinazi has pleaded facts demonstrating she is otherwise qualified to perform the essential functions of her job. *See, e.g.*, *Thankgod*, 2021 WL 5195662, at *2. Accordingly, Defendants' motion to dismiss Eskinazi's failure to accommodate claim is **DENIED**.

**F. NJLAD: Age, Sex, and Disability Discrimination (and Hostile Work Environment)**[8]

The New Jersey Law Against Discrimination ("NJLAD") protects against various forms of discrimination, including discrimination based on age, sex, and disability. *See* N.J. Stat. Ann. § 10:5-12. In general, to establish a *prima facie* case for unlawful termination under the NJLAD, a plaintiff must demonstrate: (1) the plaintiff belongs to a protected class, (2) the plaintiff was qualified for the position held, (3) the plaintiff was terminated despite adequate qualifications, and (4) after termination the position remained open and the employer continued to seek applications.

---

[8] The Court does not summarize the parties' arguments with respect to Eskinazi's age, sex, and disability discrimination claims or her hostile work environment claim brought under the NJLAD as they mirror the arguments made with respect to the federal law equivalents of same. *See supra* Sections III.B, III.C., III.D., III.E.1.

23

*Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 301 (3d Cir. 2004) (citing *Bergen Com. Bank v. Sisler*, 723 A.2d 944, 953(N.J. 1999)).

### 1.    Age Discrimination

Age discrimination claims under the ADEA and NJLAD are "governed by the same standards." *Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 65 (3d Cir. 1996). For the reasons discussed above, Defendants' motion to dismiss Eskinazi's NJLAD age discrimination claim is **DENIED**. *See supra* Section III.D.

### 2.    Sex Discrimination

Claims brought under Title VII and NJLAD "are analyzed under the same standard." *Barnes v. Off. Depot, Inc.*, Civ. A. No. 08-1703, 2009 WL 4133563, at *5 (D.N.J. Nov. 24, 2009) (listing cases). For the reasons discussed above, Defendants' motion to dismiss Eskinazi's NJLAD sex discrimination claim is **DENIED**. *See supra* Section III.B.

### 3.    Disability Discrimination

NJLAD disability claims and ADA claims are governed by the same standard. *Lawrence*, 98 F.3d at 70. For the reasons discussed above, Defendants' motion to dismiss Eskinazi's NJLAD disability discrimination claim is **DENIED**. *See supra* Section III.E.

### 4.    Hostile Work Environment

NJLAD hostile work environment claims and Title VII are analyzed under the same standard. *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (applying the same elements to hostile work environment sexual harassment claim under Title VII and NJLAD). For the reasons discussed above, Defendants' motion to dismiss Eskinazi's NJLAD hostile work environment claims based on her sex, age, and perceived disability are **DENIED**. *See supra* Section III.C.

### G. NJLAD: Retaliation

Defendants raise their arguments against Eskinazi's retaliation claim for the first time in their reply brief. (*Compare* ECF No. 36-1 (omitting any argument against Eskinazi's NJLAD retaliation claim) *with* ECF No. 41 (including an argument against Eskinazi's NJLAD retaliation claim.) As such, the Court considers these arguments waived. *See Rivers v. Nat'l Ass'n of Letter Carriers, Loc. 673*, Civ. A. No. 15-3070, 2016 WL 389983, at *2 (D.N.J. Feb. 1, 2016) (citing *Anspach v. City of Phila.*, 503 F.3d 256, 259 (3d Cir. 2007)); *see also Hilburn v. Dep't of Corr.*, Civ. A. No. 07-6064, 2010 WL 703202, at *11 (D.N.J. Feb. 23, 2010) ("Typically, an argument not raised in an opening brief is waived." (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))); *Zemel v. Korchmar*, Civ. A. No. 20-9972, 2020 WL 6391193, at *3 (D.N.J. Oct. 30, 2020) ("Even if, arguendo, [the defendant] is correct in her assertion that Count 6 is duplicative, this is a new argument raised in a reply brief and will not be considered . . . . Thus, . . . the motion to dismiss Count 6 will be denied."); *Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 331 n.13 (D. Del. 2009) ("Issues raised for the first time in a reply brief should not be heard." (citing *Laborers' Int'l Union of N. Am., AFL-CIO*, 26 F.3d at 398)); *Valerino v. Hoover*, 643 F. App'x 139, 142 n.5 (3d Cir. 2016) ("[D]istrict courts . . . generally deem arguments made only in reply briefs to be forfeited." (quoting *MBI Grp., Inc. v. Credit Foncier Du Cameroun*, 616 F.3d 568, 575 (D.C. Cir. 2010))). Accordingly, Defendants' motion to dismiss Eskinazi's NJLAD retaliation claim is **DENIED**. *But see* Section III.I.1 (dismissing Eskinazi's NJLAD retaliation claim with respect to Auslander).

### H. NJ EPA: Unequal Pay based on Sex, Age, Disability

Defendants urge the Court to dismiss Eskinazi's New Jersey Equal Pay Act ("NJ EPA") claims because while she alleges "several people [who] she trained for unspecified positions were

paid more than her[,] [s]he does not say what those individuals' job duties were, whether they were disabled, or whether they were of a similar age to her." (ECF No. 36-1 at 15.) Additionally, Defendants point out she has not "provide[d] the difference in their salaries, the key component of these causes of action." (*Id.*)

Eskinazi argues she "only needs to raise an inference that she is being denied equal pay for equivalent work due to her" disability, age, and sex. (ECF No. 40 at 17.) According to Eskinazi, she has done so by alleging "she trained four younger, male and/or nondisabled senior employees who all got higher titles and pay than her." (*Id.* (citing ECF No. 26 ¶ 18.).)

In reply, Defendants reassert Eskinazi's Amended Complaint is deficient. (ECF No. 41 at 14–15.) Defendants note although Eskinazi provided "name[s] of the employees she alleges were better paid because they were either younger, men or not disabled, she d[id] not provide any information regarding where the employees worked, what roles they held, what salaries they received, or how their salaries compared to" Eskinazi's salary. (*Id.*) Defendants also point out an inconsistency in the Amended Complaint: Dawn Lewis, a woman, was paid more than Eskinazi. (*Id.* at 15.)

The NJ EPA "amended the [NJLAD] to require pay equality across all protected classes." *Perrotto v. Morgan Advanced Materials, PLC*, Civ. A. No. 18-13825, 2019 WL 192903, at *1 (D.N.J. Jan. 15, 2019) (citing N.J. Stat. Ann. §§ 34:11–56:1). The NJ EPA makes it unlawful

> [f]or an employer to pay any of its employees who is a member of a protected class at a rate of compensation, including benefits, which is less than the rate paid by the employer to employees who are not members of the protected class for substantially similar work, when viewed as a composite of skill, effort and responsibility.

N.J. Stat. Ann. § 10:5-12(t). "For the purposes of this subsection, 'member of a protected class' means an employee who has one or more characteristics, including . . . age, . . . sex, [and] disability." *Id.*

"Generally, courts considering [NJ EPA] claims analyze such claims under the framework of the federal EPA." *Spiewak v. Wyndham Destinations, Inc.*, Civ. A. No. 20-13643, 2023 WL 869309, at *5 (D.N.J. Jan. 26, 2023) (citing 29 U.S.C. § 206(d)). To put forth a *prima facie* case of unequal pay discrimination, a plaintiff need only show that "employees of the opposite sex were paid differently for performing 'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions." *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000).[9] "[F]ail[ure] to offer any factual context for these claims, such as who these [younger, non-disabled,] male employees were, where they worked, what roles they held, what salaries they received, or how their salaries compared to [the] [p]laintiff's" may render these claims fatal under Rule 12(b)(6). *Hyra v. Chipotle Servs.*, Civ. A. No. 24-8836, 2025 WL 417055, at *5 (D.N.J. Feb. 6, 2025).

### 1. Unequal Pay Based on Sex

Eskinazi identifies three male comparators who "received higher . . . pay than her"—Verga, Arman, and Ruber."[10] (ECF No. 26 ¶18–19.) Eskinazi notes Verga, Arman, and Ruber were "senior employees in Finance and HR [with] higher title[s,]" whose salaries were greater than hers. (*Id.*) Fatally, however, Eskinazi has not alleged facts that support an inference these comparators were

---

[9] The NJ EPA covers not only unequal pay claims based on gender but also unequal pay claims based on age and disability. *See* N.J. Stat. Ann. § 10:5-12(t).

[10] While Eskinazi describes another comparator, Lewis, as a "male . . . counterpart," in the immediate paragraph, Eskinazi consistently uses female pronouns to describe Lewis, leading the Court to infer Lewis is not in fact a male counterpart. (ECF No. 26 ¶¶ 18–19.)

performing "equal work." *Stanziale*, 200 F.3d at 107. She notes she "trained [these] senior employees" but the Court cannot reasonably infer these comparators were performing "equal work" based on that fact alone. (ECF No. 26 ¶ 18.) Without more, Eskinazi's unequal pay claim based on her sex is **DISMISSED WITHOUT PREJUDICE**.

### 2. Age and Disability

Eskinazi's unequal pay claims based on her age and disability are likewise fatal—she has not alleged facts to show younger and non-disabled comparators were getting paid more for "equal work." (*Id.* ¶¶ 18–19.) With respect to the comparators who were younger than Eskinazi, which includes Verga, Arman, Ruber, and Lewis, Eskinazi, again, has not alleged facts to show these four coworkers were getting paid more for "equal work." *Stanziale*, 200 F.3d at 107. While she notes Lewis "was better compensated than her" despite Eskinazi taking over part of her assigned responsibilities (ECF No. 26 ¶ 19), she has not alleged what Lewis's remaining responsibilities are, let alone whether Lewis's work required equal skill and effort. *Stanziale*, 200 F.3d at 107. These same deficiencies plague the non-disabled comparators she has put forth. (ECF No. 26 ¶¶ 18–19.) Accordingly, Eskinazi's unequal pay claims based on her age and disability are **DISMISSED WITHOUT PREJUDICE**.

### I. Claims Against Auslander

Defendants argue the Amended Complaint should be dismissed against Auslander for two reasons: (1) the NJLAD applies only to employers and Eskinazi's employer is Couranto, not

Auslander, and (2) "only parties to contracts are liable for breach" and Auslander is not a party to the agreement at issue.[11] (ECF No. 36-1 at 15.)

Eskinazi argues Auslander may be held liable under the NJLAD via an aider and abettor theory of liability. (ECF No. 40 at 18.) Additionally, Eskinazi contends under New Jersey law, "an individual supervisor or CEO/President" may be "individually liable" for breach of contract claims. (*Id.* (citing *Allen v. V and A Bros., Inc*, 997 A.2d 1067 (N.J. Super. Ct. App. Div. 2010), *aff'd in part as modified, rev'd in part*, 26 A.3d 430 (N.J. 2011)).)

In reply, Defendants point out there is no discussion of "owners being liable for breach of a contract of the corporation" in *Allen*. (ECF No. 41 at 15.) They also note *Magna Fabric Inc. v. New York Art & Shipping, LLC* is a case involving "an oral guarantee made on behalf of a corporation," which, according to Defendants, is not relevant here given the facts as alleged. (*Id.* (citing No. A-5322-11T3, 2013 N.J. Super. Unpub. LEXIS 2016, at *7 (App. Div. Aug. 8, 2013)).) Moreover, Defendants ask the Court to dismiss the NJLAD claims against Auslander because Eskinazi has not put forth facts that could support an aiding or abetting claim. (*Id.* at 16 (setting forth the standard for aiding and abetting and arguing Eskinazi's Amended Complaint is devoid of facts capable of making out such a claim).)

### 1. NJLAD

With respect to "the NJLAD, 'individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the aiding and abetting mechanism.'" *Thange v. Oxford Glob. Res., LLC*, Civ. A. No. 19-5979, 2022 WL 2046938, at *10

---

[11] As the motion to dismiss is written, Defendants do not meaningfully attack any of the claims brought against Auslander except the NJLAD claims and the breach of contract claim. (ECF No. 36-1 at 15.) As such, the Court considers any argument directed at the other remaining claims against Auslander waived. *Hilburn*, 2010 WL 703202, at *11 ("Typically, an argument not raised in an opening brief is waived.").

(D.N.J. June 7, 2022) (quoting *Cicchetti v. Morris Cnty. Sheriff's Office*, 947 A.2d 626, 645 (N.J. 2008)). "The NJLAD makes it unlawful '[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NJLAD], or to attempt to do so.'" *Id.* (quoting N.J. Stat. Ann. § 10:5-12(e)). "[T]he words aiding and abetting 'require active and purposeful conduct.'" *Cicchetti*, 947 A.2d at 645 (quoting *Tarr v. Ciasulli*, 853 A.2d 921, 929 (N.J. 2004)).

Here, Eskinazi has asserted the following NJLAD claims against Auslander: (1) age, sex, and disability discrimination, (2) hostile work environment, and (3) retaliation. (ECF No. 26 ¶¶ 54–58, 71–80.) But, fatally, Eskinazi has not alleged facts that meet the "active and purposeful conduct" required to hold Auslander liable for any of these claims. *Cicchetti*, 947 A.2d at 645 (quoting *Tarr*, 853 A.2d at 929). For instance, Eskinazi does not articulate the "amount of assistance given by" Auslander, whether Auslander "was present at the time of the asserted" conduct at issue, or even Auslander's "state of mind." *Tarr*, 853 A.2d at 929. Indeed, in discussing Auslander specifically, Eskinazi merely alleges Auslander approached Eskinazi for the Director of Finance and Human Resources role and emailed her in March 2014 regarding terms of employment. (ECF No. 26 ¶¶ 13, 15.) Accordingly, Eskinazi's NJLAD claims against Auslander are **DISMISSED WITHOUT PREJUDICE**.

### 2. Breach of Contract

The Court need not decide whether Auslander may be held liable for a breach of contract because Eskinazi has failed to sufficiently allege the existence of a contract. *See supra* Section III.A. Accordingly, the breach of contract claim against Auslander is **DISMISSED WITHOUT PREJUDICE**.

## IV. CONCLUSION

For the reasons set forth above, and for good cause having been shown, Defendants

Couranto and Auslander's Motion to Dismiss (ECF No. 36) is **GRANTED IN PART** and **DENIED IN PART**. The breach of contract claim and the unequal pay claim are **DISMISSED WITHOUT PREJUDICE** as to both Couranto and Auslander. Additionally, the disability and age discrimination claims brought under Title VII are **DISMISSED WITH PREJUDICE** as to Couranto. Moreover, the following three NJLAD claims brought against Auslander are likewise **DISMISSED WITHOUT PREJUDICE**: (1) age, sex, and disability discrimination, (2) hostile work environment, and (3) retaliation. An appropriate order follows.


Date: February 17, 2026                    */s/ Brian R. Martinotti*
                                           **HON. BRIAN R. MARTINOTTI**
                                           **UNITED STATES DISTRICT JUDGE**